PRIOR *v.* NEWSOM.

Opinion delivered June 28, 1920.

1.  GIFTS—PAROL GIFT OF LAND.—There can be no valid parol gift of land in the absence of a present conveyance; that is, a conveyance made with the intention that it take effect at once and not at a future time; and hence where one married an owner of land and took possession under a verbal agreement that he should acquire title at his wife's death, there was no perfected gift.

2.  GIFTS—AGREEMENT TO CREATE RIGHT OF SURVIVORSHIP.—An agreement to create a right of survivorship in land is not a gift because the present right of possession and the possession do not pass thereby.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; reversed.

*Bevens & Mundt,* for appellant.

The verdict is contrary to the law and the evidence, and the court erred in its instructions to the jury both in giving and refusing instructions. 50 Ark. 340; 82 *Id.* 33; 106 *Id.* 21; 131 *Id.* 335. The proof shows clearly that appellee did not have seven years adverse possession. Adverse possession to constitute title must be exclusive, and there is no exclusive possession by the husband against the wife when both of them are living upon the land. 131 Ark. 335. See also 2 C. J. 120; 1 R. C. L. 201. See also 126 Ala. 381; 89 Okla. 283; 93 Ala. 452; 61 Cal. 109; 215 Ill. 552; 68 Neb. 14; 14 Ore. 280; 179 Pa. St. 89. A parol gift of land to be valid must be a then present gift, and not to take effect *in future.* 20 Cyc. 1211; 82 Ark. 33. The evidence of appellee shows that there was no present transfer of title.

*Fink & Dinning,* for appellee.

1. Appellant did not plead or refer to the statute of frauds nor object to the introduction of testimony to establish a verbal sale of the property to appellee, and if there was a verbal sale to appellee by Molly Pollard appellant can not recover. There was ample testimony to sustain the finding for appellee.

2. There is no error in the instructions, and the answer of defendant set up two good defenses to the suit: a verbal conveyance and title by adverse possession.

SMITH, J. This litigation involves a twenty-acre tract of land owned by Mary Newsom in her lifetime, and the parties to the litigation are her husband, the appellee, and appellant, who claims to be her nephew and sole heir-at-law. Suit was brought by appellant, who alleged that he was the sole and only heir-at-law of Mary Newsom; and was defended by appellee upon two grounds, first, that he had title to the land by a

parol gift, and, second, that he had title to the land by adverse possession.

The parties are colored people. Appellee testified that he was old and had no children, and that Mary Pollard was old and had no children. That he frequently visited her at her home, and that she told him she had no heirs at all, and in reliance upon this statement they agreed to marry, and did marry, and that he would not have married her had he known that she had any heirs, and he denied that appellant was a nephew of his wife. He further testified that Mary Pollard had allowed the house and the place to get in bad repair, and that the outhouses were also in bad repair; that he repaired the buildings before the wedding at a cost to himself of $225, and that he expended this money under the agreement that the land would be his after the wedding.

We are of the opinion, however, that when the testimony of appellee himself, as well as that offered in his behalf, is considered in its entirety, it fails to show a parol gift. We think it clear that this old couple had the idea that they could marry and by verbal agreement create a right of survivorship in their joint property. Appellee testified that after spending the $225 repairing the place he was married to Mary Pollard in 1909, and that he and his wife lived on the land together until her death in 1912. Taxes for the years 1909, 1910, 1911 and 1912 were paid on the land in the name of Mollie Newsom, she being known both by the names of Mollie and Mary. Since 1912 taxes have been paid in appellee's name.

Appellee had four policies of insurance in different fraternal orders, and it was agreed that his wife should have the benefit of these policies, and that she should have all other property owned by him at the time of his death. In regard to the land, on his cross-examination appellee testified as follows:

"Q. Did you have an agreement with your wife that if you happened to die first that the land would still be hers? A. I had an agreement; I knew it was hers;

I had an agreement with her this way: I belonged to three or four organizations, and I told her if I died why my policies all would go to her; that was the agreement we made about it. Q. I asked you in the event of your death what went with the lands? A. It went to her. Q. You had no children at all you say? A. No, sir. Q. But you have got other kin folks haven't you? A. Yes, sir. Q. Brothers and sisters? A. I got only one brother, half brother. Q. You say you would not have married her if you had known she had any kin folks at all? A. That was the agreement, that she didn't have any. Q. And, in the second place, the agreement was if she died first the land should go to you? A. Yes, sir. Q. And if you died first the land should go to her? A. My policies would go to her. Q. And the land? A. The land was already hers,—because I was her husband.'' Upon redirect examination he testified as follows: ''Q. You made these improvements on the house before you went on the place, didn't you? A. Yes, sir. Q. You made them after the agreement was made that if you did these things the property was to be yours? A. Yes, sir, to be mine. Q. And in the event of her death the property was to be; yours throughout your lifetime? A. Yes, sir.'' And upon his recross-examination he testified as follows: ''Q. You say this land was given to you before you were married along in 1908 or 1909? A. Yes, sir. Q. Let me get that clearly. She said that if you died, notwithstanding the fact that she had given it to you, that if you died, the land was to go to her? A. If I died before she died, I considered the land was hers after I died. Q. Now that trade that you made with her was in 1908 or 1909, was it? A. Yes, sir, in 1909.'' And upon redirect examination he further testified: ''Q. You state that you gave your wife the money and she went to the courthouse and paid the taxes? A. Yes, sir. Q. And it was your understanding when the wife dies the husband takes the land? A. Yes, sir, comes into possession. Q. That was the understanding by her and you? A. Yes, sir. Q. But all the land belonged to you

as soon as you made these improvements? A. Yes, sir. Q. But if you died, she as your wife would come into possession of it? A. Yes, sir." And upon recross-examination he further testified: "Q. And it was also your land if your wife died and she didn't have any relatives; the law gave you the land? A. Gave me the land. Q. Because she told you she had no relatives, you thought, as a matter of law, the land descended to you? You thought regardless of anything the land went to you? A. What, after she died? Q. Yes. A. Yes, sir."

A witness named Porter testified that Mary Newsom told him after her marriage that she had no relatives and that she wanted her husband to have the land.

An instruction given to the jury correctly declared the law to be that there could be no valid parol gift unless there was a present conveyance, that is, a conveyance made with the intention that it take effect at once, and not at a future time, and it is insisted that the verdict of the jury under this instruction is conclusive of that question. But, as we have said, we do not think the testimony warranted the submission of that issue to the jury, and does not support the verdict of the jury in appellee's favor. There was a manifest purpose to give appellee this land, but there was no present attempt to effectuate that purpose by surrendering and delivering the possession and passing the title thereof. Appellee did marry Mary Pollard, and did enter upon and take possession of the land, as the jury might have found, but he was not to acquire the title until the death of his wife, and there was, therefore, no perfected gift under which the title could and did pass. *Young* v. *Crawford,* 82 Ark. 33. An agreement to create a right of survivorship is not a gift, because the present right of possession, and the possession, do not pass thereby.

If appellee did not acquire the title to the land as a gift, and we so hold, he could not have acquired title by adverse possession, as this suit was brought within less than five years from the date of the death of his wife.

The court erred in submitting these defenses to the jury and the judgment will, therefore, be reversed and the cause remanded for a new trial.